**Sherri ROGERS**

v.

**William Bradford JANZEN, PHD, et al.**

Civ. A. No. 87–4669.

United States District Court,
E.D. Louisiana.

March 23, 1989.

Richard Ducote, New Orleans, La., for Sherri Rogers.

McGlinchey, Stafford, Mintz, Cellini & Lang, Frederick R. Campbell, Michael S. Guillory, New Orleans, La., for William

Bradford, Janzen, PhD & William Bradford.

Lemle, Kelleher, Kohlmeyer, Dennery, Hunley, Moss & Frilot, H. Martin Hunley, Jr., Trial Atty., Susan Northrop, New Orleans, La., for Ralph Underwager, PhD & Institute for Psychological Therapies St. Paul Fire & Marine Ins. Co.

Garic Kenneth Barranger, Covington, La., for Frank Gray, Jr.

## ORDER AND REASONS

ARCENEAUX, District Judge.

This matter comes before the Court on motions for summary judgment filed by each of three groups of defendants: 1.) William Bradford Janzen, Ph.D., William Bradford Janzen, Ph.D., a professional corporation, and National Union Fire Insurance Company ("Janzen"); 2.) Ralph Underwager, Ph.D., Institute for Psychological Therapies, and St. Paul Fire and Marine Insurance Company ("Underwager"); and 3.) Frank Gray, Jr. ("Gray"). Having thoroughly reviewed the record, the memoranda of counsel, and the law, this Court has determined that it will abstain from exercising jurisdiction in this matter and dismiss the plaintiff's complaint without prejudice.

The plaintiff filed this tort suit in diversity against three groups of defendants for actions arising out of state child custody proceedings and attendant child abuse allegations involving the plaintiff's child and ex-husband, Gray. Janzen, a court appointed psychologist and witness, and Underwager, an expert witness, testified in St. Tammany custody proceedings to the effect that the child was not sexually abused by her father, contrary to the plaintiff's allegations. Gray presently has custody of his eight year old daughter. Plaintiff claims that defendants have 1.) caused her extreme and permanent pain and suffering, 2.) caused her to sever her relationship with the child, and 3.) caused her to lose the child's services, society, and affection. Janzen is sued for medical malpractice and gross negligence; Underwager is sued for medical malpractice, gross negligence and intentional tort; Gray is sued for intentional tort.

## ABSTENTION

While plaintiff seeks only monetary damages and sues only on her own behalf and not on behalf of the child, the primary allegations continue to involve child abuse. This issue was specifically addressed by the state trial court and the record references an appeal to the First Circuit. Plaintiff is now attempting to relitigate the substantive issues of the state court proceedings. While plaintiff does not specifically ask this court to review the state court's proceedings, adjudication of her claim by this court would require inquiry into custodial status, visitation rights, and family relationships. Federal courts routinely defer to the state court system in matters involving familial relationships. Further, since custody determinations are subject to continuing judicial supervision and to modification upon change in circumstances, this Court must avoid federal interference with state court proceedings.

This case clearly falls within the domestic relations exception to federal jurisdiction. "A federal court may well decline jurisdiction if the tortious conduct is part of an ongoing series of disputes centering around the marital relationship." 13B Wright, Miller, and Cooper, *Federal Practice and Procedure: Jurisdiction* 2d § 3609 (1984). Although plaintiff's cause of action is founded in tort, the facts and circumstances involved are identical to those of the state custody proceedings which began as early as December 1984. "(S)tripped of its verbiage, this is no more and no less than a domestic relations case ..." and falls within the domestic relations exception to federal jurisdiction. *Jagiella v. Jagiella*, 647 F.2d 561, 565 (5th Cir.1981) quoting *Bacon v. Bacon*, 365 F.Supp. 1019 (D.Or.1973).

The Fifth Circuit has confirmed that "federal courts may abstain from hearing cases involving domestic relations, even if the case also involves ordinary tort or contract claims". *Goins v. Goins*, 777 F.2d 1059 (5th Cir.1985), (abstention proper

where child custody modification sought); *Bacon*, 365 F.Supp. 1019 (D.Or.1973), (federal court refusal to exercise diversity jurisdiction in suit between ex-spouses alleging the intentional infliction of mental anguish).

Factors relevant to a determination of abstention include: the existence of a strong state interest in the proceeding, special competency of the state court, issues involving custody and parental rights, and the reality of congested federal dockets. *Crouch v. Crouch*, 566 F.2d 486 (5th Cir.1978). The essential question in determining whether a district court may abstain from exercising federal jurisdiction is "whether hearing the [tort or contract] claim will necessitate the court's involvement in domestic issues, i.e. whether it will require inquiry into the marital or parent-child relationship". *Goins*, 777 F.2d at 1061, quoting *Jagiella*, 647 F.2d 561 (5th Cir.1981). Since plaintiff's cause of action is integral to the matters already decided by the state court and would necessitate a reevaluation of issues and evidence presented and addressed in the state custody proceedings, this suit clearly falls within the domestic relations exception to federal subject matter jurisdiction. *Brown v. Hammonds*, 747 F.2d 320 (5th Cir.1984).

The bed-rock reasons supporting the doctrine of abstention are found in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). The *Younger* doctrine reflects a strong policy of noninterference by the federal courts in state proceedings and is applicable in the civil setting. *Moore v. Sims*, 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979); *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975). "Abstention, that doctrine designed to promote federal-state comity, is required when to render a decision would disrupt the establishment of a coherent state policy." *Zaubi v. Hoejme*, 530 F.Supp. 831, 836 (W.D.Penn.1980) citing *Colorado River Water District v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). In *Zaubi*, the court clearly articulates the rationale for abstention which is applicable in the present case:

Since the custody of children is regulated by the standard, 'the best interest of the child', and because a change of circumstances may occur to change what is in the child's best interest, custody proceedings are always subject to being reopened.... For this Court to entertain this claim is to inevitably create a change in circumstances that will probably cause the state custody proceedings to be reopened, thus necessitating further litigation efforts in state court to reevaluate the children's best interest once again. *Zaubi*, 530 F.Supp. at 836.

Retention of jurisdiction, in the present case, offends principles of comity. It is clear that a district court has no appellate jurisdiction over state judgments. *Rhoades v. Penfold*, 694 F.2d 1043, 1047 (5th Cir.1983) citing *Gresham Park Comm. Organ v. Howell*, 652 F.2d 1227 (5th Cir. 1981). Plaintiff's claim would require this federal district court to review the state court's proceedings. Therefore, fundamental principles of comity compel this Court to abstain from exercising jurisdiction in this matter and defer to the state court system.

## SUMMARY JUDGMENT

Assuming this Court were to be required to exercise jurisdiction over this matter, the Court finds merit in the defendant's motions for summary judgment. It is undisputed that none of the defendants have caused plaintiff's alleged loss. In 1984, the child was adjudicated a "child in need of care" by a Louisiana state court. Testimony from the October 6, 1986 custody proceedings establish that the mother/child relationship had been under the supervision and control of the state court system for several years. To the extent that the plaintiff's relationship with her child was under the control and supervision of the State of Louisiana, the plaintiff cannot establish a causal link between the defendants' actions and her alleged loss.

Further, both Jantzen's and Underwager's actions were authorized by the state court and pursuant to its direction. Defendant Gray's actions regarding the child and

plaintiff were also regulated by the state court system.[1] Any alleged loss sustained by the plaintiff falls within a time frame in which Gray's behavior was authorized by, and subject to, the authority of the state court pursuant to its custody determinations.

■ Finally, summary judgment would be appropriate because Janzen and Underwager have established that they enjoy absolute immunity from all tort liability for the actions sued upon. Both Janzen and Underwager performed psychological evaluations on the child and testified during the state custody proceedings.[2] The United States Supreme Court has authorized absolute immunity for persons who function as an integral part of judicial proceedings. *Briscoe v. LaHue*, 460 U.S. 325, 103 S.Ct. 1108, 1115, 75 L.Ed.2d 96 (1983). The Eighth Circuit has extended the *Briscoe* oral testimony absolute immunity shield to reports and recommendations prepared for the court. *Myers v. Morris*, 810 F.2d 1437 (8th Cir.1987). In applying *Briscoe*, the Sixth Circuit focused on a psychologist's function of providing information to the court and the relevant state agency to determine the best interest of the child as analogous to that of a witness in judicial proceedings. *Kurzawa v. Mueller*, 732 F.2d 1456 (5th Cir.1984).[3]

Historically, Louisiana jurisprudence has affirmed witness immunity from suit arising out of testimony during judicial proceedings. *Austin v. Borel*, 830 F.2d 1356 (5th Cir.1987); *Oakes v. Walther*, 179 La. 365, 154 So. 26 (1934). An expert is "free to give his opinion whether others might disagree with his conclusions or not". *Moity v. Busch*, 368 So.2d 1134 (La.App. 3rd Cir.1979). In addition to the above jurisprudence, the Louisiana legislature provides immunity from both civil and criminal liability authorized by La.Rev.Stat. 14:403.[4]

Both Janzen and Underwager performed functions which were integral to judicial proceedings. Janzen was appointed by the state, as an expert, to evaluate mother, father and child pursuant to a custody determination. During a recess of the October 6, 1986, custody proceedings, expert witness Underwager evaluated the child in chambers at the trial judge's specific request. Immunity protection is applicable to both psychologists.

## CONCLUSION

In conclusion, this Court has determined that it is appropriate to decline jurisdiction in this particular case because of the significant connection between the substantive facts of this case and the facts of the Louisiana state court custody proceedings based on the domestic relations exception

1. The record indicates that the legal custody of the child was vested in the State of Louisiana, D.H.H.R., from December 19, 1984, until July 2, 1987, when custody was awarded to Gray.

2. Plaintiff's futile attempt to carve out an exception to the immunity doctrine is based on one Michigan appellate decision which has recently been vacated by the Michigan Supreme Court. *Bolton v. Jones*, 156 Mich.App. 642, 401 N.W.2d 894 (1986), judgment vacated by 426 N.W.2d 183 (Mich.1988), on remand 173 Mich.App. 725, 434 N.W.2d 415 (1988). On remand, the appellate court reaffirmed itself. However, *Bolton* must be viewed in perspective, as a departure from the authority of the Michigan Supreme Court, and more importantly, as contrary to the broad policy of immunity doctrine as articulated by the Louisiana courts, the Louisiana legislature, and the United States Supreme Court.

3. Other courts have refused to allow psychological evaluations and recommendations which

were an integral part of judicial proceedings to become a source of liability. *Williams v. Congdon*, 43 N.C.App. 53, 257 S.E.2d 677 (1979), (psychiatrist's report which was basis of custody award could not be made the basis of a cause of action for medical malpractice of libel); *Anderson v. Glissman*, 577 F.Supp. 1506 (D.Col. 1984), (divorcing parties, who agreed to court-appointed psychiatrist for evaluation relevant to custody proceedings, were owed no duty by court-appointed psychiatrist).

4. La.Rev.Stat. 14:403 provides in pertinent part:

Any person other than the alleged violator reporting pursuant to this Section in good faith, and any person other than the alleged violator who cooperates in good faith in a subsequent investigation conducted by an agency under the provisions of this Section, shall have immunity from civil liability that otherwise might be incurred or imposed. Such immunity shall extend to participation in any judicial proceeding resulting from such report.

**310**

to federal jurisdiction and because of the long-standing doctrine of comity respected by state and federal courts. In addition, were this Court to exercise its jurisdiction, summary judgment would be appropriate for all defendants based on the doctrine of immunity and this Court's determination that, as a matter of law, no causal link existed between plaintiff's alleged loss and defendants' acts.

Accordingly,

IT IS ORDERED that this Court will abstain from exercising jurisdiction in this matter and the plaintiff's complaint is hereby DISMISSED without prejudice.

