WILLIAMS et al., Appellants,

v.

DEFIANCE COUNTY DEPARTMENT OF PUBLIC WELFARE, Appellee.

[Cite as *Williams v. Defiance Cty. Dept. of Pub. Welfare* (1990), 67 Ohio App.3d 628.]

Court of Appeals of Ohio,
Defiance County.

No. 4-88-20.

Decided May 14, 1990.

*John P. Goldenetz,* for appellants.

*Byron S. Choka,* for appellee.

MILLER, Judge.

This is an appeal by plaintiffs-appellants, Wanda L. Williams and John Williams, from a judgment of the Court of Common Pleas of Defiance County granting summary judgment to defendant-appellee, Defiance County Department of Public Welfare, and dismissing plaintiffs' complaint.

In the complaint, plaintiff Wanda Williams alleges that she was injured as a result of an intentional tort committed by the defendant, Defiance County Department of Public Welfare, through its agent, Defiance County Home, and as a result the plaintiff aggravated a pre-existing condition.

Plaintiff's husband, John Williams, alleges that due to the injuries to his wife, he suffered a loss of services and consortium and he will continue to suffer such losses.

On October 4, 1988, the defendant filed a motion for summary judgment. The trial court, in its November 8, 1988 judgment entry, granted summary judgment in favor of the defendant, finding the following:

" * * * Upon consideration of the pleadings, the deposition of Deb Baldwin, the deposition of Plaintiff, Wanda Williams, and the briefs and oral arguments of counsel and construing the evidence most favorable to the Plaintiffs, it is the conclusion of this Court that there is no genuine issue as to any material fact and that the Defendant is entitled to judgment as a matter of law."

Plaintiffs appeal setting forth one assignment of error:

"The trial court erred in concluding that no genuine issue as to any material fact existed."

Defendant asserts that any action for recovery by plaintiff is barred by R.C. 4127.03.

R.C. Chapter 4127 pertains to Public Works Relief Compensation.

R.C. 4127.03 provides as pertinent:

"Every work-relief employee who sustains an injury and the dependents of such as are killed, in the course of and arising out of employment, wheresoever such injury or death occurs, except when such injury or death is caused by willful misconduct or intent to bring about such injury or death, or when the use of intoxicating liquors or drugs is the proximate cause of such injury or death, shall be entitled to receive out of the public work-relief employees' compensation fund, compensation, death benefits, medical, nurse, and hospital

services, medicine, and funeral expenses, for loss sustained on account of such injury or death, as is provided for by sections 4123.01 to 4123.94, inclusive, of the Revised Code."

R.C. 4127.10 further provides:

"Employers who comply with sections 4127.01 to 4127.14 of the Revised Code, are not liable to respond in damages at common law or by statute for injury or death of any work-relief employee, wherever occurring."

Appellee contends that the above-cited sections preclude recovery by plaintiff for any injury whether the result of intentional tort or otherwise.

In *Blankenship v. Cincinnati Milacron Chemicals, Inc.* (1982), 69 Ohio St.2d 608, 23 O.O.3d 504, 433 N.E.2d 572, a case pertaining to employers and employees under R.C. Chapter 4123 dealing with Workers' Compensation, the syllabus provides:

"An employee is not precluded by Section 35, Article II of the Ohio Constitution, or by R.C. 4123.74 and 4123.741 from enforcing his common law remedies against his employer for an intentional tort."

Appellee contends that the provisions of R.C. 4127.03 and 4127.10 are distinguishable from R.C. 4123.74 which provides in pertinent part:

"Employers who comply with section 4123.35 of the Revised Code shall not be liable to respond in damages at common law or by statute for any injury, or occupational disease, or bodily condition, received or contracted by any employee in the course of or arising out of his employment, or for any death resulting from such injury, occupational disease, or bodily condition occurring during the period covered by such premium so paid into the state insurance fund, or during the interval of time in which such employer is permitted to pay such compensation directly to his injured employees or the dependents of his killed employees, whether or not such injury, occupational disease, bodily condition, or death is compensable under sections 4123.01 to 4123.94, inclusive, of the Revised Code."

R.C. 4123.35 provides for payments into the Workers' Compensation Fund by employers and for self-employed insurers.

It is appellee's argument that the provision in R.C. 4127.03 "wheresoever such injury or death occurs" distinguishes the two sections.

The court in *Blankenship,* however, at 614, 23 O.O.3d at 508, 433 N.E.2d at 577, stated that " * * * the protection afforded by the [Workers' Compensation] Act has always been for negligent acts and not for intentional tortious conduct."

We conclude that the ruling of *Blankenship* is equally applicable to the type of case at bar and that the trial court could not have ruled as a matter of law that appellant's claim was precluded by the terms of R.C. 4127.03.

■ If, however, plaintiff is to prevail on her intentional tort action occurring on January 5, 1984, prior to the effective date of R.C. 4121.80 defining intentional tort, the action must be determined in accordance with the standards set forth in paragraphs five and six of the syllabus to *Van Fossen v. Babcock & Wilcox Co.* (1988), 36 Ohio St.3d 100, 522 N.E.2d 489, as follows:

"Within the purview of Section 8(A) of the Restatement of the Law 2d, Torts, and Section 8 of Prosser & Keeton on Torts (5 Ed.1984), in order to establish 'intent' for the purpose of proving the existence of an intentional tort committed by an employer against his employee, the following must be demonstrated: (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty and not just a high risk; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task."

"To establish an intentional tort of an employer, proof beyond that required to prove negligence and beyond that to prove recklessness must be established. Where the employer acts despite his knowledge of some risk, his conduct may be negligence. Where the risk is great and the probability increases that particular consequences may follow, then the employer's conduct may be characterized as recklessness. As the probability that the consequences will follow further increases, and the employer knows that injuries to employees are certain or substantially certain to result from the process, procedure or condition and he still proceeds, he is treated by the law as if he had in fact desired to produce the result. However, the mere knowledge and appreciation of a risk—something short of substantial certaintity—is not intent. (*Blankenship v. Cincinnati Milacron Chemicals, Inc.* [1982], 69 Ohio St.2d 608, 23 O.O.3d 504, 433 N.E.2d 572; and *Jones v. VIP Development Co.* [1984], 15 Ohio St.3d 90, 15 OBR 246, 472 N.E.2d 1046, explained.)"

The Supreme Court in *Pariseau v. Wedge Products, Inc.* (1988), 36 Ohio St.3d 124, 127, 522 N.E.2d 511, 514, found that the employee has at all times the burden of demonstrating that the employer had knowledge amounting to substantial certainty that an injury would take place.

In *Sanek v. Duracote Corp.* (1989), 43 Ohio St.3d 169, 172, 539 N.E.2d 1114, 1117, the Supreme Court stated:

" * * * The focus of an intentional tort action under the standards set forth in *Blankenship, Jones* and *Van Fossen, supra,* is on the knowledge of the employer regarding the risk of injury. The plaintiff has the burden of proving by a preponderance of the evidence that the employer had 'actual knowledge of the exact dangers which ultimately caused' injury. *Van Fossen, supra,* [36 Ohio St.3d], at 112, 522 N.E.2d at 501 (criticizing *Serna v. Statewide Contractors, Inc.* [1967], 6 Ariz.App. 12, 429 P.2d 504)."

The undisputed evidence before the trial court herein shows that plaintiff, Wanda Williams, on or about September 30, 1983, filed an application for general relief, wherein she stated that she had a disability which was a "Bad Back." (We parenthetically note that plaintiff stated at her deposition that prior to January 5, 1984, she had no problems with or injuries to her back.)

Subsequently, the Department of Public Welfare assigned the plaintiff to work at the Defiance County Home.

The plaintiff, Wanda Williams, alleges that while working at the Defiance County Home she was assigned to mop twenty-three rooms and to empty bedpans. The plaintiff testified in her deposition that after working for four hours she told Mrs. Margolis, the site supervisor, that her back was hurting and that Margolis then told her:

"A. * * * if I didn't keep up my job and keep on doing what I was supposed to be doing, she would have to call my case worker on me.
" * * *

"Q. Do you remember the circumstances under which she told you that?

"A. I told her my back was bothering me, and I was going to have to call my husband to come and get me because I couldn't stand no more work; and she said if I did, she would call my case worker, and I would get no more GR."

However, the plaintiff further testified as follows:

"Q. All right. So, she didn't prevent you from leaving, did she?

"A. No, she didn't prevent me from leaving.

"Q. It wasn't like you were forced?

"A. No.

"Q. Or imprisoned or compelled to stay there?

"A. No.

"Q. You chose to do that yourself rather than risk the consequences of Mrs. Margolis calling your case worker?

"A. Right."

Although the plaintiff testified that she told Deb Baldwin, a case worker, that she had a bad back and could not lift heavy objects, the record reflects that the plaintiff failed to provide necessary medical information from her doctor showing that she had a disability. In fact, the plaintiff testified that her doctor was unaware that she had a bad back and could not lift heavy objects at the time of the accident.

We also note that the Department of Public Welfare assigned plaintiff to the work site, but did not itself assign her to perform the work which allegedly caused her injury. Further, the record does not reflect that the defendant had notice that the plaintiff was unable to perform the specific job assigned. The plaintiff testified that when she was given the assignment from Margolis she did not inform her that she was unable to perform the work. It was not until four hours later that Margolis was informed by plaintiff that she had a bad back and could not perform the work assigned. In addition, there is no indication in the record that Margolis was acting on behalf of the defendant, nor is there any indication that Margolis had the necessary authority to require the plaintiff to continue to work.

In deciding as to whether the trial court correctly granted summary judgment to defendant, Defiance County Department of Public Welfare, we note that the Supreme Court stated in *Kunkler v. Goodyear Tire & Rubber Co.* (1988), 36 Ohio St.3d 135, 138, 522 N.E.2d 477, 480–481:

"In deciding whether the trial court correctly granted summary judgment to Goodyear, we must follow Civ.R. 56 and view the record in the light most favorable to the party opposing the motion. *Williams v. First United Church of Christ* (1974), 37 Ohio St.2d 150, 66 O.O.2d 311, 309 N.E.2d 924. Further, the inferences to be drawn from the underlying facts contained in depositions, affidavits, and exhibits must be construed in the opposing party's favor. When so construed, the motion must be overruled if reasonable minds could find for the party opposing the motion. *Hounshell v. American States Ins. Co.* (1981), 67 Ohio St.2d 427, 433, 21 O.O.3d 267, 271, 424 N.E.2d 311, 315."

Civ.R. 56(C) provides in pertinent part:

" * * * Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from such

evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor."

In *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274, it is stated:

"Civ.R. 56(C) specifically provides that before summary judgment may be granted, it must be determined that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party."

We conclude that defendant's actions under the facts of the case did not rise to the level of risk-exposure to plaintiff so egregious as to constitute an intentional wrong. See *Sanek v. Duracote Corp., supra.*

Therefore, construing the evidence most strongly in favor of the plaintiffs, we conclude that no genuine issues of material fact exist under the test set forth in *Van Fossen, supra,* and that the trial court's entering of a summary judgment for the defendant was appropriate.

We further find that because the plaintiff, Wanda Williams, is not successful on the merits of the primary case, plaintiff, John Williams, cannot recover on the derivative action for loss of consortium and services.

Finding no error prejudicial to the plaintiffs as assigned and argued we affirm the judgment of the trial court.

*Judgment affirmed.*

SHAW, P.J., and THOMAS F. BRYANT, J., concur.