OPINION
{¶ 1} Appellant, Joseph Browne, appeals from the March 27, 2002 judgment entry of the Lake County Court of Common Pleas, granting appellee's, Walgreen Company, motion for summary judgment and denying appellant's motion to compel as moot.
 {¶ 2} On August 17, 2001, appellant filed a complaint against appellee alleging an intentional tort resulting from a work-related injury. On September 10, 2001, appellee filed an answer. On February 22, 2002, appellee filed a motion for summary judgment pursuant to Civ.R. 56. On March 12, 2002, appellant filed a brief in opposition to appellee's motion for summary judgment as well as a motion to compel appellee to produce its accident/incident report. On March 22, 2002, appellee filed a motion to strike appellant's brief in opposition and a reply brief in support of the motion for summary judgment.
 {¶ 3} The facts emanating from the record are as follows: on December 3, 2000, appellant was injured at Walgreens store number 3454, located on Vine Street in Wickliffe, Ohio. At the time of the incident, appellant was a seventeen-year-old high school student with a learning disability, who worked as a "stocker" at the Vine Street store as part of a school work study program. Appellant's job duties included working within the stockroom and stocking store shelves. Appellant was hired in March 2000, by Richard Cusick ("Cusick"), who was the manager of the Vine Street Walgreens.
 {¶ 4} The incident at issue occurred in the Vine Street store's stockroom where only Thomas Deister ("Deister"), the assistant manager, and appellant were present. Appellant was on a break and sat on top of a table while he smoked a cigarette and talked to his girlfriend on the telephone. Appellant sat with his right foot dangling and his left foot outstretched and resting on the baler's[1] opening. According to Deister's March 7, 2002 deposition, he told appellant twice to get off the telephone and return to work immediately, but appellant failed to comply. Deister then placed some boxes in the baler which caught appellant's left foot after Deister turned on the machine.
 {¶ 5} Both Deister and Cusick testified that by keeping the baler door closed functioned as a safety guard that prevented a person's feet, hands, or other body parts from accidentally coming into contact with the crusher. When the incident occurred, however, Deister utilized the bypass switch, which takes the safety guard off the machine, and operated the baler with the door open because the boxes were too large. Deister admitted that he was taking a certain amount of risk by operating the baler without the bypass switch. Deister stated in his deposition that Mark Seigfried, an executive assistant manager at Walgreens store number 3312, in Euclid, Ohio, trained him to use the bypass switch if the bale was too full and the door would not shut. However, Cusick stated in his March 7, 2002 deposition that he never told Deister to use the bypass switch when operating the baler. Neither Cusick nor Deister trained appellant to operate the baler since he was a minor and was not permitted to use the machine.
 {¶ 6} According to Deister's deposition, he had no intention of hurting appellant and what happened was an accident. No prior injuries ever occurred from the use of a baler at any other Walgreens. Also, Deister never injured himself or anyone else on the machine. In addition, the baler never malfunctioned and was not in need of repair when the incident took place.
 {¶ 7} After appellant's left foot got caught in the baler, he began screaming and bleeding profusely. Based on appellant's March 7, 2002 deposition, Deister hit the emergency switch and carried him to the office. According to Cusick's and Deister's depositions, after the injury occurred, appellant re-started the baler after Deister hit the emergency stop button. Appellant was taken by ambulance to Lake West Hospital and was life-flighted to MetroHealth. As a result of this incident, appellant's left foot was permanently damaged.
 {¶ 8} On March 27, 2002, the trial court denied appellee's motion to strike appellant's brief in opposition, granted appellee's motion for summary judgment, and ruled that appellant's motion to compel appellee's accident/incident report was moot. It is from that judgment that appellant filed a timely notice of appeal on April 25, 2002, and makes the following assignment of error:
 {¶ 9} "The trial court erred to the prejudice of [appellant] in granting summary judgment in favor of [appellee]."
 {¶ 10} In his sole assignment of error, appellant argues that the trial court erred in granting appellee's motion for summary judgment because a genuine issue of material fact exists as to each element of his employer intentional tort claim.
 {¶ 11} In order for a summary judgment to be granted, the moving party must prove: "* * * (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made."Mootispaw v. Eckstein (1996), 76 Ohio St.3d 383, 385.
 {¶ 12} The Supreme Court stated in Dresher v. Burt (1996),75 Ohio St.3d 280, 296, that: "* * * the moving party bears the initial responsibility of informing the trial court of the basis for the motion,and identifying those portions of the record which demonstrate theabsence of a genuine issue of fact on a material element of the nonmovingparty's claim. The `portions of the record' to which we refer are those evidentiary materials listed in Civ.R. 56(C), such as the pleadings, depositions, answers to interrogatories, etc., that have been filed in the case. * * *" (Emphasis sic).
 {¶ 13} If the moving party satisfies this burden, then the nonmoving party has the burden pursuant to Civ.R. 56(E) to provide evidence demonstrating a genuine issue of material fact. If the nonmoving party does not satisfy this burden, then summary judgment is appropriate. Civ.R. 56(E). Appellate courts review a trial court's granting of summary judgment de novo. Brown v. Scioto Cty. Bd. of Commrs. (1993),87 Ohio App.3d 704, 711. The Brown court stated that "we review the judgment independently and without deference to the trial court's determination." Id. An appellate court must evaluate the record "in a light most favorable to the nonmoving party." Link v. Leadworks Corp.
(1992), 79 Ohio App.3d 735, 741. Furthermore, a motion for summary judgment must be overruled if reasonable minds could find for the party opposing the motion. Id.
 {¶ 14} This court stated in Renner v. East Mfg. Corp., 11th Dist. No. 2001-P-0135, 2002-Ohio-6691, at ¶ 20, quoting Gibson v. DrainageProducts, Inc., 95 Ohio St.3d 171, 2002-Ohio-2008, at ¶ 16, that in order to establish a claim of employer intentional tort, an employee must demonstrate all of the following: "`(1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task.'" "The proof necessary to establish `intent' on the part of an employer is beyond that proof required for negligence and recklessness." Renner, supra, at ¶ 20, citing Hannah v. Dayton Power Light Co. (1998), 82 Ohio St.3d 482,484. "The mere knowledge and appreciation of a risk, something short of substantial certainty, is not intent." Renner, supra, at ¶ 20, citingGibson, at ¶ 17. Courts must judge cases involving workplace intentional torts on the totality of the circumstances surrounding each incident. Gibson at ¶ 27.
 {¶ 15} A foreseeable risk is a risk that is substantially certain to occur. Fleck v. Snyder Brick Block (Mar. 16, 2001), 2d Dist. No. 18368, 2001 Ohio App. LEXIS 1197, at 6. "Indeed, the [Fyffe] factors operate to impose a foreseeability test. They require proof that the instrumentality, process, or condition that was the agency of the employee's injury subjected the employee to a risk that the form of harm which in fact resulted was almost certain to occur * * *." Id.
 {¶ 16} Under the first prong of Fyffe, an employee must demonstrate that the employer had knowledge of the existence of the dangerous process or condition within its business operation. Fyffe v. Jeno's, Inc.
(1991), 59 Ohio St.3d 115, 118. In the instant matter, the trial court stated in its March 27, 2002 judgment entry that "* * * both [Cusick], the manager at the store in which [appellant] was employed, and Deister testified that operating the baler with the door open is a dangerous procedure. Thus, [appellant] satisfies the first prong of Fyffe." We agree. The record clearly shows that there is a genuine issue of material fact as to the first element of Fyffe. However, an employer is not liable, even when a material issue of fact concerning the first element of Fyffe is shown, if appellant cannot show a material issue of fact concerning one or more of the remaining elements. See, generally, Burnsv. Presrite Corp. (1994), 97 Ohio App.3d 377.
 {¶ 17} Under the second prong of Fyffe, an employee is required to set forth facts showing that the employer had knowledge that if the employee was subjected by his employment to the dangerous condition, then harm to the employee would be a substantial certainty. Fyffe, supra, at 118. The absence of prior accidents strongly suggests a lack of knowledge by an employer that injury from a particular procedure or process was substantially certain to occur. Foust v. Magnum Restaurants, Inc.
(1994), 97 Ohio App.3d 451, 455. In the case sub judice, the trial court stated in its judgment entry that "* * * there is no evidence that any person had previously been injured as a result of the operation of the baler. Moreover, there is no evidence that [appellant] was injured as a result of the baler malfunctioning, that the baler had ever previously malfunctioned, or that the baler was * * * `in a condition of disrepair.' Furthermore, there is no evidence that [appellee] modified or altered the baler in any manner, that the baler was operated in a manner in which it was not designed, or that [appellee] deliberately removed a safety guard from the baler. * * * Therefore, [appellant] does not satisfy the second prong of Fyffe." We agree. Nothing in the record suggests that appellee had knowledge that if appellant was subjected by his employment to such dangerous process, procedure, instrumentality or condition, then harm to appellant would be a substantial certainty. Thus, the risk of the harm that occurred to appellant was not foreseeable to appellee, pursuant toFleck, supra.
 {¶ 18} Even assuming arguendo that appellant satisfies the second prong of Fyffe, he fails to show a material issue of fact concerning the third prong. Under the third prong of Fyffe, the employer does not have to expressly order the employee to engage in the dangerous task which led to his death. Gibson, supra, at ¶ 23, citing Hannah, supra, at 487. Instead, "in an action alleging workplace intentional tort, in order to overcome a motion for summary judgment, an opposing party can satisfy this [third] requirement by presenting evidence that raises an inference that the employer, through its actions and policies, required the employee to engage in the dangerous task." Id.
 {¶ 19} In the case at bar, the primary issue is whether the third element of Fyffe is satisfied under the circumstances presented. Appellant argues that if the trial court had the benefit of Gibson, which was decided on May 8, 2002, over one month after the trial court's judgment in this case, the result would have been different and summary judgment would have been denied. We disagree.
 {¶ 20} The Supreme Court stated in Gibson that "[w]hether [the employee] was specifically requested to participate or was actually participating in [the operation] is not relevant to determining whether [the employee] was required to perform a dangerous task. Rather, the primary concern is whether [the employer], through its policies and conditions of employment, placed [the employee] in a position where he was subjected to a `dangerous process, procedure, instrumentality or condition' and harm was substantially certain to follow." Gibson at ¶ 27.
 {¶ 21} Using this court's reasoning in Renner, supra, which was decided seven months after Gibson, there is no evidence that appellant, or any other employee, was required to operate the baler with the door open as part of his employment. There is nothing to suggest that appellee, through its actions and policies, required appellant to engage in a dangerous task, unlike Gibson and Hannah, supra, in which the employees were injured while completing tasks specifically required by their employment. Most importantly, pursuant to Gibson, appellee did not cause, create, or place appellant in a position where he was subjected to a dangerous environment in which harm was substantially certain to follow. Therefore, appellant does not satisfy the third prong of Fyffe.
As such, because appellant fails to demonstrate a genuine issue of material fact regarding the second and third elements of Fyffe, the trial court properly granted appellee's motion for summary judgment and denied appellant's motion to compel as moot.
 {¶ 22} For the foregoing reasons, appellant's sole assignment of error is not well-taken. The judgment of the Lake County Court of Common Pleas is affirmed.
Judgment affirmed.
Cynthia Westcott Rice, J., Concurs.
William M. O'Neill, dissents with dissenting opinion.
[1] A baler is a tall machine, slightly larger than a refrigerator, which crushes cardboard boxes.